In re Richard E. MORRIS, Debtor.

IOWA STATE DEPT. OF SOCIAL SERVICES, Plaintiff,

v.

Richard E. MORRIS, Defendant.

Bankruptcy No. 80–01031.
Adv. No. 80–0191.

United States Bankruptcy Court,
N. D. Iowa, E. D.

July 13, 1982.

---

*ORDER* Vacating Order of April 15, 1981, in part;

*ORDER* Finding That Law to be Applied is Law in Effect at Time Bankruptcy Proceedings Were Commenced;

*ORDER* Denying Motion for Adjudication of Law Points;

*ORDER* Directing Pre-trial Conference on Remaining Issues be Scheduled by Separate Order.

WILLIAM W. THINNES, Bankruptcy Judge.

The matter before the Court is the question of the dischargeability of the support payments owing from the Debtor to his ex-spouse that have been assigned to the state. When the Bankruptcy Reform Act of 1978 became effective on October 1, 1979, Section 523(a)(5)[1] provided that the debts for alimony, support, or maintenance payments, although not dischargeable as a rule, would be dischargeable once they had been assigned to any third person or entity. The Iowa State Department of Social Services initially brought this action, contesting the constitutional validity of 11 U.S.C. § 523(a)(5) (1976 ed. Supp. III) insofar as it discharged support obligations that had been assigned to a state governmental unit. At the time this constitutional issue was submitted to the Court, it was understood that, after the Court had ruled on the constitutional issue, the Debtor's ex-spouse would be joined as a necessary party because of the uncertainty surrounding the question of the exact amount of support payments she had assigned to the State.[2] The Court upheld the constitutional validity of this section. *In re Morris,* 10 B.R. 448, 455, 456 (Bkrtcy.N.D.Iowa, 1981).[3] The

---

**1.** 11 U.S.C. § 523(a)(5) (1976 ed. Supp. III).

**2.** By joining the ex-spouse, the dischargeable nature of the Debtor's total support obligation could thus be determined in one proceeding. See Rule 19(a)(1) of the Federal Rules of Civ. Procedure.

**3.** *In re Morris, supra* at 456, mistakenly purported to deny and dismiss the 11 U.S.C. § 523(a)(5) complaint of the Iowa Department of Social Services. Because a question still exists as to the exact amount of support payments that have been assigned to the state, such complaint should not have been denied and dismissed. The Court's Order in *In re*

Debtor's ex-spouse was then joined as a necessary party.

Prior to a trial being held on the question of the exact amount of support payments that the Debtor's ex-spouse had assigned to the state, however, the amendment to 11 U.S.C. § 523(a)(5) was enacted.[4] This statute amended 11 U.S.C. § 523(a)(5) to make support payments assigned to the state pursuant to § 402(a)(26) of the Social Security Act[5] nondischargeable.[6] The amendment, by its terms, became effective on the day of its enactment,[7] which was August 13, 1981.

The terms of the amendment, however, do not state the manner in which the statute is to be applied to 11 U.S.C. § 523(a)(5) dischargeability complaints in bankruptcy proceedings that have been commenced prior to the effective date of such amendment.[8] The Iowa State Department of Social Services filed a Motion for Adjudication of Local Points, arguing that the Court should apply the law in effect at the time the Court renders its decision on the dischargeability question. In its Motion, the Movant further argued that, because the Court would necessarily render its decision after the effective date of the amendment, the Court should find that the support payments assigned to the State by the Debtor's ex-spouse are nondischargeable pursuant to the amendment to 11 U.S.C. § 523(a)(5). The parties were heard on the Motion. Robert R. Huibregtse, Assistant Attorney General for the State of Iowa, and Chris-

tian R. Smith, Assistant County Attorney, represented the Iowa Department of Social Services, and Attorney Peter J. Klauer represented the Debtor. The matter was then taken under advisement. The Court, being fully advised, now makes the following Findings of Fact, Conclusions of Law, and Orders.

There is no dispute as to the facts of the case. The Debtor filed his bankruptcy petition before the effective date of the amendment to 11 U.S.C. § 523(a)(5). If the Court applies the law in effect at the time his bankruptcy petition was filed, the support payments to his ex-spouse that she has assigned to the State are dischargeable. If the Court applies the law in effect at the time it renders this decision, these assigned support payments are not dischargeable.

Thus, the question before the Court is solely a legal one: which version of 11 U.S.C. § 523(a)(5) should be applied to dischargeability complaints in bankruptcy proceedings that have been commenced prior to the effective date of the amendment to 11 U.S.C. § 523(a)(5)? This question has been addressed by other courts. One group of decisions has held that the law to be applied is the law in effect at the time the court renders its decision on the dischargeability question. *See e.g., In re Leach*, 15 B.R. 1005, 8 B.C.D. 587 (Bkrtcy.D.Conn., 1981).[9] Another group of decisions has held

---

*Morris, supra*, will, therefore, be vacated to the extent that it denies and dismisses such complaint. A trial must still be held on the question of the exact amount of support payments that Debtor's ex-spouse assigned to the state.

**4.** Section 2334 of Title XXIII of the Omnibus Budget Reconciliation Act of 1981, P.L. 97–35, which reads in part:

(b) Section 523(a)(5)(A) of Title 11, United States Code, is amended by inserting before the semicolon the following: "(other than debts assigned pursuant to Section 402(a)(26) of the Social Security Act)."

(c) The amendments made by this section shall become effective on the date of the enactment of this Act.

**5.** 42 U.S.C. § 602(a)(26) requires that a state plan for aid and services to needy families with children must require each applicant or recipient, as a condition of eligibility for aid, to

assign to the state any rights to support, in the applicant's own behalf or on behalf of any other family member for whom the applicant is applying for or receiving aid, from any person, which have accrued at the time such assignment is executed.

**6.** *See* note 4 *supra.*

**7.** *See* note 4 *supra.*

**8.** *See* note 4 *supra.*

**9.** *In re Spell*, 650 F.2d 375, 377 (2d Cir. 1981) is another case that holds that the law that should be applied in dischargeability proceedings is the law in effect at the time the court renders its decision. In *Spell*, the Court of Appeals for the Second Circuit in a case under the Bankruptcy Act of 1898 was faced with the

that the law to be applied is the law in effect at the time the bankruptcy proceedings were commenced, *i.e.*, the date the bankruptcy petition was filed. *See, e.g., In the Matter of Flamini*, 19 B.R. 303, 8 B.C.D. 1289 (Bkrtcy.E.D.Mich., 1982). The Court elects to follow *In the Matter of Flamini, supra.* In the words of Judge Brody, the holdings found in the *In re Leach, supra,* line of cases "ignore traditional principles of statutory construction and do violence to the concepts of discharge and dischargeability." *In the Matter of Flamini, supra* 19 B.R. at 305, 8 B.C.D. at 1290.

 There is a presumption against the retroactive application of new legislation. *In the Matter of Flamini, supra* 19 B.R. at 305, 8 B.C.D. at 1290 (citing *Greene v. United States*, 376 U.S. 149, 160, 84 S.Ct. 615, 621, 11 L.Ed.2d 576 (1964)),[10] and the presumption cannot be said to have been overcome in the enactment of the amendment to 11 U.S.C. § 523(a)(5).[11] Furthermore, substantial policy considerations exist that support the presumption against the retroactive application of this amendment:

It must be presumed that a decision to begin a bankruptcy proceeding is not

made lightly. The decision to file a petition is reached by a debtor after consultation with his attorney as to the advantages and disadvantages of such action. The single most important factor in this decision is the scope of the discharge: which of the debtor's obligations will be dischargeable and which will have to be paid. The debtor files a bankruptcy petition in reliance upon existing law. The right to a discharge and the right of a discharge of any individual debt are important substantive rights conferred by the Bankruptcy Code. Section 523(a)(5), as originally enacted, conferred on debtors who filed petitions in bankruptcy the right to discharge a designated class of obligations. Whether as a matter of policy the right to discharge this class of obligations should have been bestowed is not in issue. What is relevant is that this significant right no longer exists by virtue of the amendment of August 13, 1981. Absent any express indication that Congress intended the August 13th amendment to apply retroactively, the reasonable expectations of debtors who acted in reliance on existing legislation should not

question of the dischargeability of support payments that had been assigned to the state. The Court reached the incorrect result in that case in finding that the debt was dischargeable pursuant to then-11 U.S.C. § 523(a)(5) because the Court failed to take note of § 403(a) of the Bankruptcy Reform Act of 1978. That section states that a case commenced under the Bankruptcy Act of 1898 "and all matters and proceedings in or relating to such cases, shall be conducted and determined under such Act as if [the Bankruptcy Reform Act of 1978] had not been enacted." If the *Spell* Court had followed the commands of this "savings provision," it would have found the debt to be nondischargeable because support payments assigned to the state were considered to be nondischargeable under the Bankruptcy Act of 1898. Even though the *Spell* Court did not follow the "savings provision," if it correctly interpreted the law concerning which law to apply when there has been a change in the bankruptcy law between the initiation of the bankruptcy proceedings and the rendering of a decision on an adversary complaint, its decision could still be considered as sound authority on that question. As will be noted, however, the Court elects not to adopt the rule announced in *In re Spell, supra.*

**10.** This rule applies whether the change in the law has been made by the enactment of a new statute or by the enactment, as in the instant case, of an amendment to an existing statute. *In the Matter of Flamini, supra*, 19 B.R. at 306, 8 B.C.D. at 1290.

**11.** As noted, *see* text accompanying note 8 *supra,* the amendment does not expressly state that it is to be applied retroactively.

The presumption against the retroactive application of new legislation is overcome when the legislation can be considered as being "curative," i.e., " 'intended to permit the accomplishment of a previously enacted design.' " *In the Matter of Flamini, supra* 19 B.R. at 305, 8 B.C.D. at 1290 (quoting *Silverlight v. Huggins,* 347 F.Supp. 895, 898 (Dist.Ct.D.VI, 1972)). The amendment to 11 U.S.C. § 523(a)(5) completely changes the law as it existed upon the effective date of the Bankruptcy Reform Act of 1978. Thus, the amendment can hardly be considered to be curative. *In the Matter of Flamini, supra* 19 B.R. at 305–306, 8 B.C.D. at 1290–1291.

be frustrated. For the foregoing reasons, it is the opinion of this court that the August 13th amendment should be given prospective application only.

*Id.* 19 B.R. at 306, 8 B.C.D. at 1291. The reasoning of the *Flamini* Court is particularly applicable to the facts of the instant case. The Debtor's bankruptcy petition was filed over fifteen months before the amendment to 11 U.S.C. § 523(a)(5) became effective. Neither the Debtor nor his attorney could have been reasonably expected to anticipate that that section would be amended over a year later and to further anticipate that such an amendment would be applied retroactively. The Debtor's expectations that the support payments that had been assigned to the state were dischargeable pursuant to the then-11 U.S.C. § 523(a)(5) were certainly reasonable, and to retroactively apply this amendment would certainly frustrate those expectations.

The adoption of a rule requiring the retroactive application of the amendment would have far-reaching, negative implications. As noted by the *Flamini* Court,

[t]here are also disturbing practical complications that would flow from the result urged by the State. Except for debts nondischargeable by virtue of paragraphs (2), (4) and (6) of Section 523(a), there is no time limit within which a complaint to determine dischargeability of a debt may be filed. *Bd. of Trustees of Univ. of Alabama v. Wright* [7 B.R. 197], 7 B.C.D. 114 (N.D.A.L.B.J.1980). Section 523(a)(5) as originally enacted and as amended is in effect a self-executing provision. Under Section 523(a)(5) as originally enacted, the assigned support payments were dischargeable. In fact, this is probably the reason why the State took no action prior to the August 13th amendment with respect to determining the dischargeability status of the debt. It would have been futile for the State to institute an action before the amendment. To hold that 523(a)(5) as amended applies in all cases where a prior determination of dischargeability had not been made with respect to assigned support payments would make it possible for the State to go back through its files and bring countless actions which had been written off and completely negate the effect of Section 523(a)(5) as originally enacted. Undoubtedly, Congress was free to make the policy change embodied in the Omnibus Budget Reconciliation Act. However, "we are not to suppose that it meant to take back what once it had given unless there is no escape from the conclusion." *In re John G. Gasteiger & Co.,* 25 F.2d 642, 643 (2nd Cir. 1928).

*Id.* 19 B.R. at 307, 8 B.C.D. at 1291 (footnotes omitted). In the instant case, the Court has already held that the assigned support payments involved herein are dischargeable, *In re Morris, supra,* at 449 (Conclusion of Law, # 2), 456. The only question remaining in this case, until the enactment of the amendment to 11 U.S.C. § 523(a)(5), was the exact amount of the support payments that had been assigned by the Debtor's ex-spouse to the State.[12] In essence, by filing the present motion, the State is attempting to "negate the effect of Section 523(a)(5) as originally enacted." Allowing the State to pursue such a course in this case and other cases, aside from flooding this Court with dischargeability complaints or with motions for citation of contempt,[13] would frustrate the expectations of countless debtors who filed their petitions prior to August 13, 1981, reasonably believing that such debts were dischargeable pursuant to then-11 U.S.C. § 523(a)(5).

---

**12.** *See* note 3 *supra.*

**13.** Instead of initiating a dischargeability proceeding in this Court, the State agency, believing that the amendment to 11 U.S.C. § 523(a)(5) now renders previously assigned support payments nondischargeable, may instead bring collection proceedings in state court. A debtor, believing that such debt had been discharged, might then be forced to initiate contempt proceedings in this court to prevent the state from continuing with such collection efforts in state court.

■ Also, debtors who have filed their bankruptcy petitions prior to August 13, 1981, may have more than their expectations harmed by the adoption of the *In re Leach* rule. The purpose of a discharge in bankruptcy is to allow the debtor to obtain a "fresh start" free from the burdens of oppressive debt. *In re Clay*, 12 B.R. 251, 255 (Bkrtcy.N.D.Iowa, 1981).[14] A debtor who has received a discharge, reasonably believing that support payments assigned by his or her ex-spouse to the state were included within the scope of that discharge, may have incurred post-petition debt that he or she might not have incurred if that debtor believed such support payments to be nondischargeable. The adoption of the *In re Leach* rule, far from promoting the "fresh start" policy underlying the Bankruptcy Code, would actually undermine it by again placing the debtor under an oppressive burden of debt and would thus undo much of what the granting of a discharge in bankruptcy was meant to accomplish.

Furthermore, debtors are not the only individuals who may have acted in reliance on the granting of a discharge:

A "fresh start" in bankruptcy, however, means more than relieving debtors from the oppressive burdens of their debts. That phrase must also mean that post-petition creditors can rely on full payment from debtors who have received a discharge. Those debtors are no longer overburdened by debt and they cannot receive another chapter seven discharge for another six years, 11 U.S.C. § 727(a)(8). By being able to rely on the possibility of full payment, post-petition creditors will be encouraged to extend credit to debtors who have received a discharge, thus increasing the likelihood for a successful fresh start by the debtor.

*In re Flack*, 19 B.R. 251, 254 (Bkrtcy.N.D. Iowa, 1982). If this Court applied the *In re Leach* rule universally, the post-petition creditors who relied on the discharge of a debtor who filed his or her bankruptcy petition prior to August 13, 1981, would have their reasonable expectations of full payment possibly defeated by the additional amount of debt burden that the application of that rule would impose upon such a debtor.[15]

Based on the foregoing reasons, this Court will follow *In the Matter of Flamini, supra*, and adhere to the presumption against the retroactive application of new legislation. This Court, therefore, will apply the law in effect at the time the debtor's bankruptcy petition was filed in determining whether the support payments assigned by the Debtor's ex-spouse to a governmental unit in return for ADC payments

---

**14.** The Iowa State Department of Social Services has indicated that it intends to seek the application of the *In re Leach* rule to cases involving debtors who filed their bankruptcy petitions prior to August 13, 1981, and who had a reasonable expectation that a discharge would be granted. *See, e.g. In re Knoke*, Bkrtcy No. 81–00220, Adv. No. 81–0701 (discharge granted on September 29, 1981); *In re Lnenicka*, Bkrtcy No. 81–00216, Adv. No. 81–0700 (discharge granted on September 24, 1981).

**15.** *See also In the Matter of Flamini, supra* 19 B.R. at 307, 8 B.C.D. at 1291:

Finally, this court is not persuaded by the authorities cited by the State for an additional reason. A review of the cases which hold that the law in effect at the time that a judge decides a dischargeability question controls rather than the date of the filing of the petition in bankruptcy reveals that all of them either directly or indirectly, rely on *In re Seaholm*, 136 Fed. 144 (1st Cir. 1905). *Sea-*

*holm* must be read in light of the law as it then existed. At the time that *Seaholm* was decided, the filing of a petition in bankruptcy did not operate as an application for a discharge. The debtor had to file a separate application for a discharge. P.L. 171, 55th Cong. § 14(a) (July 1, 1898). *Seaholm* decided that the law in effect when the bankruptcy petition was filed was not to be applied, but *Seaholm* did not decide that the law in effect when the judge decides the dischargeability question was controlling. *Seaholm* held that the law to be applied was the law in effect when the debtor applied for a discharge for the reason that when the debtor applied for a discharge, "he invoked the law as it then was." *Id.* at 147. Under the Code, the filing of the bankruptcy petition acts as an application for discharge. *Seaholm*, therefore, actually supports the argument advanced by the debtor rather than by the State.

are dischargeable under the Bankruptcy Code. The Court, having found that the Debtor's bankruptcy petition was filed prior to the effective date of the amendment to 11 U.S.C. § 523(a)(5), further finds that the law to be applied in the instant case is the law in effect prior to August 13, 1981. That law discharged debts for alimony, support, or maintenance payments that had been assigned by a debtor's ex-spouse to any person or entity, including a governmental unit.

## ORDERS

IT IS THEREFORE ORDERED that the Motion for Adjudication of Law Points of the Iowa State Department of Social Services shall be, and the same is, denied and dismissed.

IT IS FURTHER ORDERED that *In re Morris*, 10 B.R. 448 (Bkrtcy.N.D.Iowa, 1981) is reaffirmed in every respect except that a trial must be held on the question of the exact amount of support payments that were assigned by the Debtor's ex-spouse to the state.

IT IS FURTHER ORDERED that a pre-trial conference on the question of the exact amount of the support payments that were assigned will be scheduled by separate Order of this Court.