14 F.3d 240
 25 Bankr.Ct.Dec. 186, Bankr. L. Rep. P 75,668
 In re SUPERIOR SIDING & WINDOW, INCORPORATED, Debtor.
ROLLEX CORPORATION, Creditor-Appellant,
v.
ASSOCIATED MATERIALS, INCORPORATED; Certainteed
Corporation; Season-All Industries; Aluminum Products
Company, Incorporated; Construction Products, Division of
Reynolds Metal Company; Benjamin Obdyke, Incorporated; Mid
American Building Products, Creditors-Appellees.
 No. 92-1611.
 United States Court of Appeals, Fourth Circuit.
 Argued Oct. 26, 1993.
Decided Jan. 14, 1994.
 
 Suzanne Hulst Clawson, Sinkler & Boyd, P.A., Columbia, SC, argued, for creditor-appellant.
 Andrew Jackson White, Jr., Haynsworth, Marion, McKay & Guerard, Greenville, SC, argued (Robert M. White, on brief), for creditors-appellees.
 Before MURNAGHAN and NIEMEYER, Circuit Judges, and KAUFMAN, Senior United States District Judge for the District of Maryland, sitting by designation.
 OPINION
 NIEMEYER, Circuit Judge:
 
 
 1
 The question presented is whether the bankruptcy court, when presented with "cause" to grant a motion to dismiss or to convert a Chapter 11 proceeding to a Chapter 7 proceeding under 11 U.S.C. Sec. 1112(b), erred in dismissing the proceeding rather than converting it to a Chapter 7 proceeding. Rejecting the largest creditor's objection to dismissal, which was based on the fact that dismissal would protect preferences obtained by the other creditors which might be voided in bankruptcy under 11 U.S.C. Sec. 547, the bankruptcy court in this case ordered dismissal because the "consensus of a majority of [the] creditors" favored it. We conclude that this reason is legally insufficient in circumstances where the assets are insufficient to satisfy the creditors, and some creditors have obtained preferential positions that would violate the Bankruptcy Code's policy of equality. We therefore vacate the judgment and remand the case to the bankruptcy court for further proceedings.
 
 
 2
 In the course of its home improvement business, Superior Siding & Window, Inc., the debtor, purchased supplies on credit from eight suppliers who are parties to this appeal. None of the debts owed to these creditors was initially secured. When Superior Siding failed to pay these creditors, seven creditors obtained judgments, and some began to levy on Superior Siding's assets. Faced with the impending levies, Superior Siding filed a Chapter 11 proceeding in the bankruptcy court to reorganize its affairs. In its petition it listed slightly more than $52,000 worth in assets and approximately $200,000 in liabilities, owed to ten creditors (the eight suppliers, the IRS, and the South Carolina Tax Commission). Superior Siding also began an adversary proceeding against Associated Materials, Inc., one of the larger creditors, to set aside its levy on assets as a voidable preference under 11 U.S.C. Sec. 547. The judgments obtained by Associated Materials and the other creditors were entered against Superior Siding within the 90-day period before Superior Siding filed its bankruptcy petition on June 20, 1991.
 
 
 3
 The seven creditors which obtained judgments filed a motion to dismiss the Chapter 11 proceeding on the ground that no plan of reorganization could succeed and that Superior Siding had filed its petition in bad faith solely to frustrate the creditors' collection efforts. Rollex Corporation, the largest creditor with a claim in excess of $85,000, objected to dismissal and requested the court to convert the Chapter 11 proceeding to a Chapter 7 proceeding or to appoint a trustee, arguing that if the court dismissed the petition, the seven creditors would be given preferential access under state law to Superior Siding's assets, which included a large amount of inventory purchased on credit from Rollex. Rollex had not obtained a judgment and would therefore be at the end of the line in terms of priority under state law. Rollex argued that the best interest of the creditors would be in the pro rata distribution of assets under the Bankruptcy Code.
 
 
 4
 The bankruptcy court conducted an evidentiary hearing on the motion and found that Superior Siding filed its Chapter 11 proceeding in bad faith. Applying our holding in Carolin Corp. v. Miller, 886 F.2d 693 (4th Cir.1989) (holding that a Chapter 11 petition may be dismissed if it was filed in subjective bad faith and if the proposed reorganization is objectively futile), the bankruptcy court found that Superior Siding was doing little business, and that the chance of Superior Siding's successfully reorganizing its affairs was remote. Moreover, the court concluded that Superior Siding's "midnight" filing was designed solely to frustrate the collection efforts of the judgment creditors. The court also found the existence of independent acts of dishonesty and bad faith on Superior Siding's part. Addressing Rollex's request to convert to a Chapter 7 proceeding or to appoint a trustee in lieu of dismissal, the bankruptcy court concluded that because a majority of the creditors favored dismissal, the case would be dismissed. The court said:
 
 
 5
 [I]n light of debtor's obvious lack of a reasonable likelihood of reorganization and the consensus of a majority of its creditors in favor of dismissing the case, this court finds that it would be in the best interests of debtor and its creditors to dismiss this case rather than to convert it to a Chapter 7 case or to appoint a trustee for the present Chapter 11 case.
 
 
 6
 The court acknowledged that "all of [Superior Siding's] assets had been levied upon by Associated and the other creditors supporting the motion to dismiss," which might lead to their having a voidable preference over Superior Siding's largest creditor, Rollex, which did not levy upon any assets. However, the court nevertheless concluded that the will of those creditors holding preferential positions should be favored over that of the one creditor which did not hold such a position.
 
 
 7
 On appeal, the district court affirmed the bankruptcy court's dismissal order and concluded that the bankruptcy court did not abuse its discretion in refusing to convert to a Chapter 7 proceeding. The district court concluded that "nearly consensus support of dismissal by the creditors" was compelling and that it "cannot be said that this decision was an abuse of discretion merely because a single creditor may be affected adversely."
 
 
 8
 While the decision not to grant a motion to convert under 11 U.S.C. Sec. 1112(b) is discretionary, as noted by the district court, the factors to be considered in entering such a motion are matters of law which we review de novo.
 
 Section 1112(b) of Title 11 provides:
 
 9
 [T]he [bankruptcy court] may convert a case under this chapter [Chapter 11] to a case under chapter 7 of this title or may dismiss a case under this chapter, whichever is in the best interest of creditors and the estate, for cause....
 
 
 10
 A motion filed under this section invokes a two-step analysis, first to determine whether "cause" exists either to dismiss or to convert the Chapter 11 proceeding to a Chapter 7 proceeding, and second to determine which option is in "the best interest of creditors and the estate." See In re Mechanical Maintenance, Inc., 128 B.R. 382, 386 (E.D.Pa.1991). Once "cause" is established, a court is required to consider this second question of whether to dismiss or convert. See In re Finney, 992 F.2d 43, 45 (4th Cir.1993).
 
 
 11
 The "cause" requirement of Sec. 1112(b) may be satisfied by showing a subjective bad faith on the part of the debtor, in that the motive for filing the Chapter 11 petition was to abuse the reorganization process, coupled with an objective element that reorganization is in fact unrealistic. See Carolin Corp. v. Miller, 886 F.2d 693, 700-02 (4th Cir.1989). In this case, the bankruptcy court made findings that the petition was filed in bad faith and that any proposed reorganization was futile, thus providing adequate cause for a Sec. 1112(b) motion. These findings have not been challenged by the parties.
 
 
 12
 Once a court turns to the second question of determining what is in the best interest of creditors and the estate, it must ascertain the impact on the creditors and on the estate of each of the options. Thus, it has been noted that the inquiry for this element cannot be completed without comparing the creditors' interests in bankruptcy with those they would have under state law. See In re Mechanical Maintenance, Inc., 128 B.R. at 390. Moreover, in evaluating the interests, the court must consider the interests of all of the creditors. In a case similar to that before us, where one creditor was prepared, upon dismissal of a Chapter 11 proceeding, to enforce a judgment against the debtor and against the interests of other creditors, the court stated:
 
 
 13
 Though the movant seeks dismissal, Sec. 1112(b) requires a determination of whether dismissal or conversion is in the best interests of creditors and the estate. In light of the pending state court action in which the movant seeks to enforce his judgment and the underlying bankruptcy principle of equality of distribution, the Court concludes that the interest of all the creditors will best be served by conversion, rather than by dismissal.
 
 
 14
 In re Gilbert Broadcasting Corp., 54 B.R. 2, 5 (Bankr.D.N.J.1984) (emphasis added). We believe that these principles accurately flow from the requirements of 11 U.S.C. Sec. 1112(b).
 
 
 15
 The policy of the bankruptcy law to treat creditors in same classifications equally is central to the Bankruptcy Code. For instance, section 547 authorizes a bankruptcy court to set aside a preferential transfer of the debtor's interest "that enables such creditor to receive more than such creditor would receive if the case were a case under Chapter 7." 11 U.S.C. Sec. 547(b)(5). Similarly, section 726 requires that, when distributing the estate, payment "shall be made pro rata among claims of the kind specified in each [class of creditor]." 11 U.S.C. Sec. 726(b). We believe that this policy of equality among creditors, fundamental to the bankruptcy law, is one of the factors to be considered in determining the "best interest of the creditors" under Sec. 1112(b), and it is not served by merely tallying the votes of the unsecured creditors and yielding to the majority interest.
 
 
 16
 Rollex properly notes in this case that if the Chapter 11 proceeding were to be converted to a Chapter 7 proceeding, the preferential positions of the seven unsecured creditors, who obtained judgments and perhaps a secured position within 90 days of the filing of the petition, would likely be subject to avoidance under 11 U.S.C. Sec. 547, and thus all eight unsecured creditors would thereafter share in the assets of the estate on a pro rata basis. Since its claim of $85,000 represents a large portion of the total unsecured claims, Rollex contends that under such a scenario, it probably would have received a substantial portion of the assets. On the other hand, Rollex argues, under dismissal, the assets of the debtor would be seized under state law by the first to act, and that party, Associated Materials in this case, would probably obtain all of the assets. This scenario is precisely the kind of unequal access to assets which the bankruptcy laws intend to forestall.
 
 
 17
 We believe that, had the bankruptcy court made the comparison between the creditors' status in bankruptcy and their status outside of bankruptcy and had it taken into account the interests of all of the creditors, the court would have likely concluded in the circumstances of this case that the interests of the creditors would have been better served by conversion of the Chapter 11 proceeding to a Chapter 7 proceeding than by dismissal.
 
 
 18
 For these reasons, we vacate the judgment and remand this case to the district court with instructions to remand it to the bankruptcy court for further proceedings consistent with this opinion.
 
 
 19
 VACATED AND REMANDED.